**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**TAMMY S.,**

                       **Plaintiff,**

  vs.　　　　　　　　　　　　　　　　　　　　　　**5:21-CV-00156**
　　　　　　　　　　　　　　　　　　　　　　　　　　　**(MAD)**
**COMMISSIONER OF SOCIAL SECURITY,**

                       **Defendant.**

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **OLINSKY LAW GROUP**<br>250 South Clinton Street<br>Suite 210<br>Syracuse, New York 13202<br>Attorneys for Plaintiff | **HOWARD D. OLINSKY, ESQ.** |
| **SOCIAL SECURITY ADMINISTRATION**<br>625 JFK Federal Building<br>15 New Sudbury Street<br>Boston, Massachusetts 02203<br>Attorneys for Defendant | **MOLLY CARTER, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

    On September 14, 2015, Plaintiff Tammy S. filed an application for Social Security Disability Insurance Benefits ("DIB"). *See* Dkt. No. 11, Administrative Transcript ("Tr.") at 228-31. On November 30, 2015, Plaintiff's claim was denied. *See id.* at 81-92. Plaintiff made a timely request for a hearing before an Administrative Law Judge ("ALJ"), who issued an unfavorable decision on February 12, 2018. *See id.* at 7-22. Plaintiff made a request to review the decision, and on February 27, 2019, the Appeals Council denied Plaintiff's request. *See id.* at 889-92. On April 26, 2019, Plaintiff filed a complaint with the United States District Court for

the Northern District of New York, which reversed and remanded the matter back to the Commissioner on the parties' consent. *See id.* at 893. A hearing was held before an ALJ on November 24, 2020. *See id.* at 849-67. The ALJ issued an unfavorable decision on December 9, 2020. *See id.* at 800-15. Plaintiff did not file written exceptions and the Appeals Council did not review the decision.

On February 10, 2021, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) to review the Commissioner's unfavorable decision. *See* Dkt. No. 1. Plaintiff has submitted a brief arguing that the ALJ's residual functional capacity ("RFC") determination was not supported by substantial evidence. *See* Dkt. No. 16. For the reasons that follow, the Commissioner's decision denying Plaintiff benefits is affirmed.

## II. BACKGROUND

Plaintiff was approximately forty-seven years old at the time of her application, and had not finished high school or obtain a GED. *See* Tr. at 33, 35, 853. Plaintiff lives with her husband and two adult children. *See id.* at 34. Plaintiff testified that although she has a driver's license and can sometimes drive, she usually has someone else drive because she "can't really do things by [her]self like carry groceries and things like that." *Id.* From 2003 until 2010, Plaintiff worked fifty-five hours a week as a manager at a restaurant, where she was standing "pretty much the whole time" and had to lift up to seventy pounds. *Id.* at 37. Plaintiff also testified about several other jobs she held simultaneously with her restaurant job. In 2006, Plaintiff worked at a school district for one school year serving and making lunches. *See id.* at 39. Beginning in 2008 and continuing through 2010, Plaintiff was working thirty-eight hours a week for a retail store as front end management, where she was standing and walking her whole shift. *See id.* at 38. Plaintiff's alleged onset date occurred in 2010, and she has not worked since. *See id.* at 40.

In 2010, Plaintiff "fell and ... hurt [her] thoracic" spine, causing "impingement and herniated disc[s] in [her] thoracic and ... lumbar" spine. *See id.* at 43. Plaintiff testified that she has pain "[e]very day of [her] life" that fluctuates between a six out of ten and a ten out of ten (with ten being the worst level of pain) depending on whether she had recently taken her pain medication. *Id.* at 41-42, 858. This pain is located in her "back and ... thoracic area" as well has her hips. *Id.* at 41. Plaintiff takes hydrocodone twice a day with Motrin in-between, occasionally uses a muscle relaxer, and uses a transcutaneous electrical nerve stimulation unit three times a week. *See id.* at 42, 43. As a result of her injuries, Plaintiff asserts that she can not stand, sit, or walk too long without severe pain, "can't use both of [her] arms at the same time," and "just can't do much of anything," including "[e]veryday activities." *Id.* at 41. Plaintiff states that she can only walk or stand for five or ten minutes before her pain becomes severe, and can only lift a "pound or two." *Id.* at 45.

In a decision dated December 9, 2020, the ALJ determined that Plaintiff was not disabled under the Social Security Act. *See id.* at 800-15. In his decision, the ALJ found the following: (1) Plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 23, 2010; (2) Plaintiff's severe impairments included degenerative disc disease of the lumbar spine, degenerative disc disease of the thoracic spine, and obesity; (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments; (4) Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a); (5) Plaintiff had no past relevant work and a limited education; and (6) considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. *Id.* at 806-14.

### III. DISCUSSION

A.     **Standard of Review**

A person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do."

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)).  "The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step."  *Id.* (citation omitted).

In reviewing a final decision by the Commissioner under Title 42, United States Code Section 405, the Court does not determine *de novo* whether a plaintiff is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)) (other citations omitted). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

**B.     The ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 23, 2010, the alleged onset date. *See* Tr. at 806. At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative disc disease of the thoracic spine, and obesity. *See id.* The ALJ found that Plaintiff's remaining physical impairments, including her hypertension, reflux, hyperlipidemia, asthma, and diabetes, were non-severe because she did not demonstrate that they caused significant functional limitations. *See id.* The ALJ also found that Plaintiff's medically determinable mental impairments of anxiety disorder and obsessive compulsive disorder were not severe singly or in combination because they did not cause more than minimal limitation in her ability to perform basic mental work activities. *See id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that functionally equals the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 808.

The ALJ noted that he considered the criteria for Listing 1.04, Disorders of the Spine, and found that the medical evidence did not establish the requisite evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. *See id.*

    The ALJ then found that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except she could frequently balance, kneel, crawl, and crouch; occasionally stoop and climb ramps and stairs; never climb ladders, ropes, or scaffolds; needed to avoid exposure to concentrated respiratory irritants; and needed a sit/stand option in that she needed to change her position from sitting and standing or vice versa at will throughout the workday but did not need leave the workstation or area.

*Id.* The ALJ reasoned that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, ... [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 809.

    At step three, the ALJ determined that he was giving "little weight to the August 2017 opinion of Dr. Federico and Physical Therapist [Baker]." *Id.* at 812. The ALJ reasoned that, although both treated Plaintiff, (1) "they completed their opinion over a year after [Plaintiff's] date last insured," (2) they "provided very minimal references to [Plaintiff's] treatment records to support their findings," and (3) their opinions were "inconsistent with [Plaintiff's] ... medical and other records." *Id.* The ALJ also considered the opinion of Kalyani Ganesh, M.D., a consultative examiner, and afforded it "some weight." *Id.* The ALJ noted that Dr. Ganesh supported her opinion with a one-time examination of Plaintiff, but never treated her. *Id.* The ALJ found that although Dr. Ganesh's overall conclusion that Plaintiff was not disabled was consistent with the evidence as a whole, her specific finding that Plaintiff had mild, at most, physical limitations was less consistent with the medical evidence. *Id.* The ALJ specifically noted that Dr. Ganesh's

6

opinion that Plaintiff "ha[d] minimal exertional limitations and no postural limitations [was] inconsistent with [Plaintiff's] chronic pain, degenerative changes to her spine, and [her] obesity," and that Dr. Ganesh's opinion that Plaintiff "ha[d] no respiratory limitations and no need for a sit/stand option is inconsistent with [Plaintiff's] history of asthma and testimony that she cannot sit or stand for long periods without becoming uncomfortable." *Id.*

At step four, the ALJ found that Plaintiff had no past relevant work. *Id.* at 813. At the fifth and final step of the analysis, the ALJ concluded that, considering Plaintiffs age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed. *Id.* at 814. The ALJ solicited the testimony of a vocational expert, who testified that, given all of the relevant factors, Plaintiff would have been able to perform the requirements of representative occupations such as document preparer (19,000 jobs available in the national economy), addressing clerk (7,000 jobs available in the national economy), and inspector (8,000 jobs available in the national economy). *Id.* Accordingly, the ALJ determined that Plaintiff was not disabled, as defined in the Social Security Act, during the relevant time period. *Id.* at 815.

**C.  Analysis**

Plaintiff argues that the ALJ "improperly played doctor and created the RFC whole cloth" when he determined Plaintiff retained the RFC to perform sedentary work. Dkt. No. 16 at 12. Plaintiff rests this argument on assertions that the ALJ erred when he (1) did not afford the opinion of Dr. Federico and Ms. Baker, Plaintiff's treating physician and physical therapist, controlling weight; and (2) afforded some weight to Dr. Ganesh's opinion, which Plaintiff asserts was "too vague to rely on." *Id.* at 13-15. In opposition, Defendant argues that the ALJ reasonably gave little weight to Dr. Federico's and Ms. Baker's opinion, and that Dr. Ganesh's

opinion supports the RFC finding.  *See* Dkt. No. 17.

For claims filed prior to March 27, 2017, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2); *see also Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).  However, the opinion of a treating physician is not afforded controlling weight where the treating physician's opinion is contradicted by other substantial evidence in the record, such as the opinions of other medical experts.  *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  In that situation, "'the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist.'"  *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)); *see also* 20 C.F.R. § 404.1527(c).  The ALJ must then "'comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion.'"  *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)).  "The failure to provide '"good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand.'"  *Id.* (quotation omitted).

Here, the ALJ's RFC determination was supported by substantial evidence.  Initially, the ALJ was acting well within his statutory authority when he considered the medical and other evidence in the record to reach an RFC determination that did not fully align with the proffered medical opinions.  *See Curry v. Comm'r of Soc. Sec.*, 855 Fed. Appx. 46, 48 n.3 (2d Cir. 2021) (rejecting the argument that an ALJ committed reversible error by basing its RFC determination on its own lay opinion rather than on record medical evidence because, "[a]n RFC finding is

administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear") (citing 20 C.F.R. §§ 404.1545(a)(3), 416.927(c)(3), 416.945(a)).

Turning to the ALJ's decision not to afford Dr. Federico's and Ms. Baker's opinions[1] controlling weight, the ALJ offered the following support for his determination: (1) they completed their opinions over a year after Plaintiff's date last insured; (2) they provided very minimal references to Plaintiff's treatment records to support their findings, and (3) their opinions were inconsistent with the medical records. *See* Tr. at 812. With respect to the last point, the ALJ specifically found that Dr. Federico and Ms. Baker's opinion that Plaintiff "could not lift more than 2 pounds; could stand for 1 hour each day, walk for 1 hour each day, and sit for 2 hours each day; could not reach overhead; could occasionally handle, finger, and feel; and needed a cane to ambulate," were all inconsistent with treatment records that showed

> that the claimant exhibited no on-going distress or deficits in strength, sensation, standing, walking, sitting, reaching, or using her hands during examinations through her date last insured. She also was not observed using a cane or other assistive device during most examinations through her date last insured. In addition, the claimant indicated that she could perform a variety of activities of daily living through her date last insured, including cooking, cleaning, driving, and traveling out of state for vacation. On her function report, she also noted that she could lift over 2 pounds.

*Id.* Thus, the ALJ explicitly considered the extent of the treatment, the amount of medical evidence supporting Dr. Federico's and Ms. Baker's opinions, and the consistency of those opinions with the remaining medical evidence. Plaintiff does not argue that the ALJ failed, for example, to explicitly examine whether Dr. Federico and Ms. Baker were specialists. Instead, Plaintiff faults the ALJ for failing "to consider how the opinion was supported by [Dr. Federico's]

---

[1] *See* Tr. at 781-87.

9

treatment notes." Dkt. No. 16 at 13-14. However, even if Dr. Federico's treatment notes provide support for Plaintiff's view of the medical evidence, it is not the Court's function to reweigh the evidence on appeal, only to "decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 Fed. Appx. 58, 59 (2d Cir. 2013).

Even assuming the ALJ made an error when he decided not to afford Dr. Federico's and Ms. Baker's opinion controlling weight, the Court finds that the error was harmless. Where an ALJ has failed to explicitly apply all of the relevant factors when assigning weight to a medical source, such error is harmless if "'a searching review of the record' assures [the court] 'that the substance of the treating physician rule was not traversed.'" *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted). Here, a "searching review of the record" has assured the Court that the ALJ's determination not to afford Dr. Federico's and Ms. Baker's opinions controlling weight was supported by substantial evidence. First, the primary medical signs and laboratory findings[2] used by Dr. Federico and Ms. Baker to support their opinions were "x-rays" and "MRIs" which, as the ALJ noted, showed only "minor degenerative changes." Tr. at 334-37, 393-95. Furthermore, as Defendant has extensively documented, a great many of the examinations conducted on Plaintiff were inconsistent with Dr. Federico's and Ms. Baker's opinions. Specifically, these examinations repeatedly noted (1) no signs of acute or apparent distress, *see, e.g.,* Tr. at 349, 388, 449, 522, 600, 746, 1051; (2) normal gait, *see, e.g., id.* at 372, 447, 577, 746, 1161, 1203; and (3) full strength and intact sensation, *see, e.g., id.* at 383, 410, 479, 1079. Finally, these opinions, which were issued over a year-and-a-half after Plaintiff's date last insured, specifically indicated that the limitations noted therein were "assumed to be ...

---

[2] *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion").

regarding current limitations only," with the space for indicating otherwise (*i.e.*, when the limitations where first present) left blank. Tr. at 786; *see also Susan M. v. Comm'r of Soc. Sec.*, No. 1:18-CV-0623, 2019 WL 2754480, *6 (N.D.N.Y. July 2, 2019) ("[T]he April 22, 2017, opinion does not contain any indication that it is meant to apply prior to [the] [p]laintiff's date last insured of December 31, 2015, and therefore is of little probative value"). Taken together, this record evidence provides substantial support for the ALJ's determination to give little weight to Dr. Federico's and Ms. Baker's opinions.

With respect to Dr. Ganesh's opinion,[3] it is true that consultative examiner's use of the terms "mild" or "moderate" can be unreliably vague where that conclusion is not supported by additional information. *See Blau v. Berryhill*, 395 F. Supp. 3d 266, 281 (S.D.N.Y. 2019) ("[A]n ALJ may not rely on opinions that employ the terms 'moderate' and 'mild' absent additional information"); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), *superseded by regulation on other grounds by,* 20 C.F.R. § 404.1560(c)(2). Here, however, Dr. Ganesh made specific and unequivocal findings based on a physical examination of Plaintiff, including the following:

> GENERAL APPEARANCE, GAIT, STATION: The claimant appeared to be in no acute distress. Gait normal. ... Used no assistive devices. Needed no help changing for exam or getting on and off exam table. Able to rise from chair without difficulty.
> \* \* \*
> MUSCULOSKELETAL: Cervical spine shows full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. No scoliosis, kyphosis, or abnormality in thoracic spine. Lumbar spine flexion 45 degrees, extension 10 degrees, lateral flexion 5 degrees. SLR negative bilaterally. Full ROM of shoulders, elbows, forearms, and wrists bilaterally. Full ROM of hips, knees, and ankles bilaterally. No evident subluxations, contractures, ankylosis, or thickening. Joints stable and nontender.

---

[3] *See* Tr. at 529-532.

> No redness, heat, swelling, or effusion.
> NEUROLOGIC: ... Strength 5/5 in the upper and lower extremities.
> \* \* \*
> FINE MOTOR ACTIVITY OF HANDS: Hand and finger dexterity intact.  Grip strength 5/5 bilaterally.

Tr. at 530-31.  Accordingly, Dr. Ganesh's findings were not vague and the ALJ was not precluded from according "some weight" to those findings.  In any event, the December 9, 2020 decision makes it clear that the ALJ primarily relied on the totality of the evidence in the record—not Dr. Ganesh's opinion—when reaching his RFC determination.  As noted above, the ALJ was permitted to reach an RFC determination that departs from the proffered medical opinions based on the medical and other evidence in the record.  *See Curry*, 855 Fed. Appx. at 48 n.3.

Accordingly, the Court concludes that substantial evidence supports the ALJ's RFC determination.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying Plaintiff benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  August 17, 2022
        Albany, New York

Mae A. D'Agostino
U.S. District Judge